# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.               Case No. 08-CR-260

**MICHAEL PHINNEY**
   **Defendant.**

## SENTENCING MEMORANDUM

Defendant Michael Phinney pleaded guilty to possessing child pornography, contrary to 18 U.S.C. § 2252A(a)(5), and I set the case for sentencing. In imposing sentence, I first calculate the advisory sentencing guideline range, then select an appropriate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., Gall v. United States, 128 S. Ct. 586, 596 (2007); United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008); United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007).

### I. GUIDELINE CALCULATION

Simple possession of child pornography carries a base offense level of 18 under U.S.S.G. § 2G2.2(a). Defendant received additional 2-level enhancements because the material he possessed involved a prepubescent minor or a minor who had not attained the age of 12 years, § 2G2.2(b)(2), he used a computer in committing the offense, § 2G2.2(b)(6), and the offense involved more than ten images, § 2G2.2(b)(7)(A). Based on his timely plea and expression of remorse, I granted a 3 level reduction for acceptance of responsibility, § 3E1.1, for a final level of 21. Because he had no prior record, defendant fell in criminal history category I. Level 21 and category I produce an imprisonment range of 37-46 months.

## II. SECTION 3553(a)

**A.     Sentencing Factors and Analysis**

In imposing sentence, the "district court must consider all sentencing factors enumerated in 18 U.S.C. § 3553(a)." United States v. Harris, 490 F.3d 589, 593 (7th Cir. 2007), cert. denied, 128 S. Ct. 963 (2008). Those factors include:

(1)     the nature and circumstances of the offense, and the history and characteristics of the defendant;

(2)     the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the advisory guideline range;

(5)     any pertinent policy statements issued by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). After considering these factors, the court must impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public and rehabilitation of the defendant. § 3553(a)(2). This so-called "parsimony provision" represents the "overarching" command of the statute. Kimbrough v. United States, 128 S. Ct. 558, 570 (2007).

2

In its recent sentencing decisions, the Supreme Court has made clear that while the guidelines remain the starting point and the initial benchmark, the district judge may not presume that the guideline sentence is the correct one. Gall, 128 S. Ct. at 596-97; Rita v. United States, 127 S. Ct. 2456, 2465 (2007); see also United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007) ("The district courts must calculate the advisory sentencing guideline range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence."); United States v. Demaree, 459 F.3d 791, 794-95 (7th Cir. 2006) (stating that the district judge may not presume that a sentence within the range is correct, and that "his freedom to impose a reasonable sentence outside the range is unfettered"). Rather, the district court must determine an appropriate sentence based on all of the circumstances of the case and under all of the § 3553(a) factors, including the guidelines. See Gall, 128 S. Ct. at 596-97; see also United States v. Carter, 530 F.3d 565, 578 (7th Cir.), cert. denied, 129 S. Ct. 474 (2008) (explaining that the guidelines "are but one factor among those listed in 18 U.S.C. § 3553(a)").

In determining the weight to be given the guidelines' recommendation in the § 3553(a) calculus, the district court may consider whether, when it adopted the guideline, the Sentencing Commission fulfilled its "characteristic institutional role." Kimbrough, 128 S. Ct. at 563; see also United States v. Thomas, No. 08-CR-238, 2009 WL 188037, at *1-2 (E.D. Wis. Jan. 24, 2009). As Judge Bataillon recently explained:

> When Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of

3

sentences that might achieve § 3553(a)'s objectives.'" See, e.g., Kimbrough, 552 U.S. at ----, 128 S. Ct. at 574 (quoting Rita, 551 U.S. at ----, 127 S. Ct. at 2465); see also Gall, 552 U.S. at ----, 128 S. Ct. at 594 n.2 (noting that not all Guidelines are tied to empirical evidence). Consequently, the Guideline ranges of imprisonment for those crimes are a less reliable appraisal of a fair sentence. See Kimbrough, 552 U.S. at ----, 128 S. Ct. at 574-75. In such cases, it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." Kimbrough, 552 U.S. at ----, 128 S. Ct. at 575.

United States v. Gellatly, No. 08-CR-50, 2009 WL 35166, at *4 (D. Neb. Jan. 5, 2009).

## B. Government's Position on the Guidelines

The government took issue with this approach to considering the guidelines, arguing that Kimbrough was limited to the unique circumstances of the crack cocaine guideline and does not afford the district court authority to vary from other guidelines because they lack an empirical basis.[1] The cases say otherwise.

For example, in a recent en banc decision, the Second Circuit held that, after Gall and Kimbrough, "a district court may vary from the Guidelines range based solely on a policy disagreement with the Guidelines, even where that disagreement applies to a wide class of offenders or offenses." United States v. Cavera, 550 F.3d 180, 191 (2d Cir. 2008). In United States v. Hearn, 549 F.3d 680, 683 (7th Cir. 2008), the Seventh Circuit stated that in Rita "the Court made clear that a district court may depart from the Guidelines based on a policy disagreement with the Commission; that is, they may depart if they conclude that the

---

[1] I note that in Kimbrough itself the government conceded "that the Guidelines 'are now advisory' and that, as a general matter, 'courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines.'" 128 S. Ct. at 570 (quoting the government's brief). To the extent that further guidance was necessary, the Supreme Court recently made clear that district judges need not defer to the guidelines or to any congressional policies reflected therein. See Spears v. United States, 129 S. Ct. 840, 843-44 (2009).

4

Guidelines prescribe a sentence that fails to reflect Congress' purposes in creating the [Sentencing Reform Act]." And in United States v. Jones, the Second Circuit explained:

> Kimbrough and Gall both emphasize that, after Booker, the Guidelines' claim on judicial respect derives from the fact that the Sentencing Commission has the capacity courts lack to frame Guidelines on the basis of empirical data and national experience, guided by a professional staff with appropriate expertise. . . . At the same time, however, the Court recognized that, to the extent certain Guidelines do not exemplify the Commission's exercise of its characteristic institutional role, that fact could obviate the need for closer review of non-Guidelines sentences based on policy disagreements in mine-run cases.

531 F.3d 163, 172 n.7 (2d Cir. 2008) (internal citations and quote marks omitted).

District courts across the country have, post-Kimbrough, discounted various guidelines based on their flaws and lack of empirical support, including the guideline at issue here, U.S.S.G. § 2G2.2. See, e.g., United States v. Grober, No. 06-CR-880, 2008 WL 5395768 (D.N.J. Dec. 22, 2008); United States v. Stern, 590 F. Supp. 2d 945 (N.D. Ohio 2008); United States v. Doktor, No. 6:08-cr-46, 2008 WL 5334121 (M.D. Fla. Dec. 19, 2008); United States v. Johnson, 588 F. Supp. 2d 997 (S.D. Iowa 2008); United States v. Noxon, No. 07-40152, 2008 WL 4758583 (D. Kan. Oct. 28, 2008); United States v. Ontiveros, No. 07-CR-333, 2008 WL 2937539 (E.D. Wis. July 24, 2008) (Griesbach, J.); United States v. Hanson, 561 F. Supp. 2d 1004 (E.D. Wis. 2008); United States v. Shipley, 560 F. Supp. 2d 739 (S.D. Iowa 2008); United States v. Baird, 580 F. Supp. 2d 889 (D. Neb. 2008).

The government argued that § 2G2.2 is the product of empirical analysis and congressional directives, making it different from the crack guideline. However, the government offered no support for this argument, and as explained in detail below, this guideline is just as flawed as the crack guideline.

5

## III.  DISCUSSION

**A.     The Offense**

On February 20, 2007, the human resource director at defendant's company came into defendant's office and saw him looking at images of naked boys or men on his computer. She reported the incident to the co-owner of the company, and later that day after defendant left they entered his office, logged onto his computer using his password and viewed the most recent documents, which included various files of boys engaged in sex acts.

The owner contacted the FBI, which seized defendant's computer and searched it, recovering 28 files of child pornography on the hard drive. The FBI submitted the images to the National Center for Missing and Exploited Children, which was able to identify two of the boys, one Swiss and one Brazilian. The FBI also obtained a search warrant for defendant's personal laptop but found nothing additional.

**B.     The Defendant**

Defendant was fifty-seven years old with no prior criminal record. He married in 1980 but separated from his wife in February 2007, in part because of this offense. Defendant's wife and their two adopted children, ages seventeen and fourteen, continued to live in Shorewood, Wisconsin, while defendant after the separation re-located to Vashon, Washington, where he lived with his sister. Despite the separation and pending divorce, defendant's wife made positive statements about him, describing him as a good person, committed to his children and the community. Defendant served on the Village Board in Shorewood, as well as on the boards of various non-profit organizations.[2] He also compiled a solid employment record,

---

[2] Defendant resigned from the Village Board after this offense came to light.

working as Chief Executive Office of Phoenix Resource Group from 1998 to 2008, as a consultant from 1994 to 1998, for Carson Pirie Scott from 1982 to 1994, and Laacke & Joys from 1972 to 1982. He was at the time of sentencing unemployed and living with his sister rent free.

Defendant's wife indicated that he had battled depression for the past ten years and that during that time their relationship deteriorated. She described the instant offense as his "going over the deep end" and not a true manifestation of who he is as a person. (PSR ¶ 47.) The pre-sentence report ("PSR") indicated that defendant had treated for depression since the mid-90s, which involved medication and therapy. On February 27, 2007, a week after the discovery of the images on his computer, defendant admitted himself to the day treatment program at Rogers Memorial Hospital. He completed that program on March 15, 2007, and made the transition to out-patient treatment with Roger Northway, a specialist in sex offenses, which included discussion of issues associated with this offense. After about four months, they agreed that defendant was sufficiently "anchored" and not in need of continuing therapy. (PSR ¶ 54.)

The PSR also indicated that defendant was an insulin-dependent diabetic, and the condition appeared to be a serious one. He relied on a permanently placed insulin pump and checked his blood sugar rates through standard finger pricks eight to ten times per day. In January 2008, he was hospitalized in acute diabetic ketoacidosis due to a kink in the insulin pump.

**C.      Guidelines and Purposes of Sentencing**

The guidelines called for a term of 37-46 months in this case, but as indicated earlier, and as judges across the country have recognized, the guideline for child pornography offenses

7

is seriously flawed and is accordingly entitled to little respect. In this decision, I focus in particular on the guideline as it applies to offenders like defendant Phinney, those convicted of simple possession.

When the Commission completed the original guidelines in 1987, simple possession of child pornography – the offense in this case – was not a federal crime. Thus, the child pornography guideline, U.S.S.G. § 2G2.2, was limited to transporting, receiving and trafficking offenses. In 1990, Congress criminalized possession, and in response the Commission decided to create a separate guideline, § 2G2.4, with a base offense level of 10, to cover possession cases. That guideline also contained a 2-level enhancement for images of pre-pubescent children or minors under the age of 12. Under the Commission's original plan, trafficking continued to be covered by § 2G2.2, with a base offense level of 13 and possible enhancements based on the age of the children depicted and distribution for value. Gellatly, 2009 WL 35166, at *5; Troy Stabenow, Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guideline, at 3-6 (July 3, 2008), http://www.fd.org. The Commission explained its decision to create a new, lower base level for possession based on empirical data and study. Stabenow, supra, at 5.

However, in 1991, based on the erroneous perception that the Commission had lessened penalties for child pornography crimes, and over the explicit objection of the Commission, Congress required alteration of these guidelines.[3] In doing so, Congress rejected the Sentencing Commission's advice and it's studied empirical approach to child pornography sentencing. As is pertinent here, Congress directed the Commission to increase the base level

---

[3]The principal congressional proponent of the changes accused the Commission of reducing penalties for "smut peddlers" and "pedophiles." Stabenow, supra, at 6-7.

8

for simple possession from 10 to 13 and to add enhancements for the number of items possessed and for a pattern of activity involving the sexual abuse or exploitation of a minor. Gellatly, 2009 WL 35166, at *5; Stabenow, supra, at 6-9.

In 1995, Congress again directed the Commission to increase penalties for child pornography and sex crimes against children. Gellatly, 2009 WL 35166, at *5. According to a key Senate sponsor, the changes were needed to properly punish those who sexually exploited children and profited from it. Stabenow, supra, at 10-11. In response, the Commission made various changes to the guidelines including, in pertinent part, a 2-level increase in the base level for simple possession and a 2-level enhancement for use of a computer, neither of which particularly target the serious offenders about whom Congress seemed most concerned. See Gellatly, 2009 WL 35166, at *5; Stabenow, supra, at 11-12. Indeed, in a 1996 report the Sentencing Commission questioned the computer enhancement, noting that on-line pornography comes from the same pool of images found in print pornography, and that different types of computer use have different effects on the two primary harms caused by the crime – (1) the degree to which the computer facilitated widespread distribution, and (2) the degree to which it increased the likelihood that children would be exposed. Stabenow, supra, at 14-15. In other words, some computer uses are more harmful than others, yet the enhancement provided no distinction.[4] Further, data show that the enhancements for use of a computer and number of images are applicable in almost every

---

[4] Defendant received a computer enhancement in this case, even though his use of the computer did not appear to implicate or aggravate the two harms mentioned in the text. The government argued at sentencing that use of a computer constitutes a separate harm from the possession and thus should result in an enhanced sentence. As the Commission has explained, computer use can make an offense more severe, but in this case it did not.

9

case. Id. at 15; Federal Prosecution of Child Sex Exploitation Offenders, 2006, http://www.ojp.usdoj.gov/bjs/abstract/fpcseo06.htm. Likewise, over 96% of cases involve an image of a child under 12. Stabenow, supra, at 24.[5]

Finally, in 2003, with little debate and no advanced notice to or consultation with the Commission, Congress made further changes in this area, including an increase in the statutory maximum for simple possession from 5 years to 10, a 5-year mandatory minimum sentence for trafficking/receipt offenses, and more amendments to the guidelines. In response, the Commission merged the guideline dealing with possession, § 2G2.4, into the guideline dealing with trafficking, § 2G2.2, and in order to conform to the new mandatory minimum sentences and increased statutory maxima raised the base level for trafficking/receipt offenses from 18 to 22 and for possession from 15 to 18. The Commission also added significant enhancements for the number of images possessed, received or distributed. Gellatly, 2009 WL 35166, at 6; Stabenow, supra, at 18-23.

Based on the Commission's initial approach, which was based on study, defendant's guideline range in this case would have been 6-12 months.[6] But because of the changes since made, none of which exemplify the Commission's exercise of its characteristic institutional role, his range was several times that. Not only is this guideline not based on Commission study or expertise, it is directly contrary to the Commission's original, studied approach, and to several of its subsequent recommendations and reports. Accordingly, I concluded that the range under

---

[5]Defendant also received the number of images and age of the child enhancements.

[6]Under the original version of U.S.S.G. § 2G2.4, defendant's base level would be 10, plus 2 based on the young age of the children, and minus 2 for acceptance, for a final level of 10. In criminal history category I, level 10 produces a range of 6-12 months. See Stabenow, supra, at 33.

10

the 2008 guideline was worthy of little respect or deference.

I instead agreed, based on my evaluation of the particular circumstances of this case, that an appropriate sentence would be one consistent with the Commission's initial approach.[7] The crime was serious, no doubt; real children are harmed to create this material; and that harm is perpetuated each time the images are viewed. Two children were identified in this case. Defendant had to be punished for his contribution to the market for this material, and others like him had to be deterred. However, in considering the need for punishment, I had to keep in perspective precisely what this defendant did and did not do. He did not produce the images, distribute or share them, or show them to any child. He obtained no profit of any sort. Given these circumstances, I found a period of imprisonment consistent with the Commission's original approach sufficient to provide just punishment.[8]

---

[7] In Spears, 129 S. Ct. at 844, the Court approved reliance on the Commission's "expert judgment" even when, due to the effects of congressional enactments, the actual guidelines called for more severe penalties than the Commission deemed necessary.

[8] At sentencing, the government asked if, in making the observations set forth in the attached text, I was imposing a lower sentence because defendant did not commit a more serious crime. I did nothing of the sort. First, as set forth in detail above, Congress has consistently raised penalties in these types of cases based on the perception that the Commission's original approach was too lenient to smut peddlers, pedophiles and those who sexually exploited children for profit. It was therefore entirely appropriate to point out that this defendant did not fall into any of these categories. Because he was not the type of person Congress appeared to have in mind in raising the penalties, he did not require more severe punishment. Second, because the current guidelines in these cases provide little meaningful guidance, courts have been forced to attempt to grade offense severity in child pornography cases themselves. As Judge O'Malley recently stated:
> Although it is never easy to differentiate between various levels of unconscionable conduct, it is still true that "possession of pornography is the least serious of the crimes on the continuum of conduct – from possession to distribution to production to predatory abuse – that exploits children." Baird, 580 F. Supp. 2d at 893; United States v. Goldberg, No. 05-CR-0922, 2008 WL 4542957, at *5-6, 2008 U.S. Dist. LEXIS 35723, at *14-15 (N.D. Ill. Apr. 30, 2008) ("It does sustain a market for child pornography, of course, but that market

11

Based on his age,[9] lack of record and progress in treatment, I found that defendant was

> is unfortunately there regardless of what may happen to [this defendant].").[5] The individual who possesses child pornography, while demanding punishment, is "considerably less culpable than a producer or distributor of the exploitative materials and is a marginal player in the overall child exploitation scheme." Id.; see also United States v. Camiscone, No. 5:04-CR-00594 (N.D. Ohio Sept 16, 2008); United States v. Honnold, No. 5:05-CR-0492 (N.D. Ohio Feb 23, 2006). Here, Stern "never possessed [child pornography] in order to entice a child . . . never produced any of the images . . . never had any improper conduct with an actual child ... [and] never molested any child." (Doc. 12 at 10.) Indeed, "there is no evidence, direct or indirect, that the defendant ever engaged in the photography of any minors engaged in sexual conduct" or that "the defendant ever engaged in direct or indirect pedophile conduct." Honnold, No. 5:05-CR-0492, at 4; cf. United States v. Gleason, 277 Fed. Appx. 536, 540 (6th Cir. 2008) (affirming the sentencing decision of a district court that had imposed an upwards variance in part based on conduct indicating the potential for direct pedophiliac conduct). There is also no evidence that Stern regularly traded the images he downloaded.
>> FN5. The Court is also forced to note the somewhat limited impact of domestic prosecution for a fundamentally international crime. Although it is still critical to deter this aberrant conduct in the United States, no court should be deluded into believing that limiting domestic consumption alone can eradicate the international market for child pornography.
>
> Finally, the files on Stern's computer, while profoundly disturbing, were not as violent as the images found on the computers of many other defendants the Court has encountered in these cases. Cf. United States v. Reiner, 468 F. Supp. 2d 393, 398 (E.D.N.Y.2006) (cataloguing the various violent images, movies, and stories found on the defendant's computer). This suggests that Stern should be punished less severely than those defendants.

Stern, 590 F. Supp. 2d at 952. The observations I made in this case were consistent with what judges now do in child pornography cases. It appeared that the government in raising this challenge to my sentence was attempting to bolster a claim of the sort it made on appeal in United States v. Wachowiak, 496 F.3d 744, 753 (7th Cir. 2007) ("Judge Adelman's reliance on the fact that the defendant did not commit a more serious crime strikes us as questionable, however."). As I have fully explained in this note, I did not discount defendant's sentence because he did not commit a more serious crime; I merely noted the absence of those aggravating factors that prompted an increase in the original guideline range.

[9]See United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 12 (2004) (stating that recidivism rates decline steadily with age, from 35.5% for offenders age 21 and younger to 9.5% for offenders over age 50).

12

unlikely to re-offend and did not present a danger to the public. I concluded that a lengthy period of supervised release, with strict conditions, sufficed to protect the public and to deter defendant from future violations.

The government argued that defendant failed to take meaningful steps to address his problems, but he had completed treatment with Roger Northway, a respected local specialist in the field. The government provided no reason to disbelieve the statement in the PSR that additional counseling was deemed unnecessary. In any event, I required further evaluation and necessary treatment as a condition of supervised release. The government also cited a study completed at the Bureau of Prisons' facility at Butner, which concluded that a significant percentage of defendants convicted of possession of child pornography later admitted that they had actually engaged in acts of child molestation. However, that study told me nothing about this defendant. The record before me contained no evidence that defendant had ever harmed a child. Further, for the reasons set forth in detail by Judge Pratt in Johnson, 588 F. Supp. 2d at 1005-07, the Butner studies are flawed. Most significantly, participants risk being kicked out of treatment if they do not admit prior contacts.[10]

I considered defendant's medical and other treatment needs, and found that they were best met in the community. As discussed, defendant's diabetes was severe, prone to serious aggravation if not properly monitored. His mental health issues also could be addressed in the

---

[10] I found ironic the government's argument that defendant had to be imprisoned because he may act (or perhaps already had acted) "on his impulses" (Govt.'s Sentencing Memorandum at 9), but that I could not consider that defendant had not committed "a more serious crime." The government cannot have it both ways. The notion that a child pornography defendant has or will commit a contact offense is always lurking in the background in these cases. But courts should not assume that a defendant has or will commit additional crimes without a reliable basis. See United States v. England, No. 08-2440, 2009 WL 348841, at *5-6 (7th Cir. Feb. 13, 2009).

13

community, after a sufficient period of confinement to punish and deter. I declined to impose a longer period of imprisonment because, in the government's view, defendant had not sufficiently addressed his psychological issues.

Under all the circumstances, I found a sentence of 6 months' imprisonment, followed by 10 years' supervised release, sufficient but not greater than necessary. Because this sentence was supported by the particular facts of the case and the Commission's original approach to these types of cases, it created no <u>unwarranted</u> disparity. See <u>United States v. McGee</u>, 479 F. Supp. 2d 910, 913 (E.D. Wis.2007) (stating that disparity between sentences is "unwarranted only if the judge fails to provide sufficient reasons for the difference, grounded in the § 3553(a) factors").

The government cited <u>United States v. Goldberg</u>, 491 F.3d 668 (7th Cir.), <u>cert. denied</u>, 128 S. Ct. 666 (2007), in which the court reversed as unreasonable a sentence of 1 day followed by 10 years supervised release, but that case was easily distinguishable. The defendant in that case, twenty-three years old and a convicted drug offender, downloaded file-sharing software that gave him access to a web site called "100% PreTeenGirlPics." Over a period of 18 months, he downloaded hundreds of pornographic photographic images, some depicting children as young as two or three being vaginally penetrated by adult males. He offered these images to other subscribers to the web site to induce them to send similar images in return. He masturbated while viewing the pornographic images. <u>Id.</u> at 669. The record also contained the report of a psychologist:

> who stated that the defendant has been using pornography for more than a decade, that he "believed he was smart enough not to get caught and if he were caught he believed he would not have any consequences," that he has "little knowledge, understanding or empathy for the little girls depicted in the images," that "he began using pornography when he was 12-13 and continues to fantasize

14

about the same age girls he looked at then," that he has "persistent sexual interest in adolescent males and females," that he is a "pedophile," that he "has admitted to other deviant behaviors, namely voyeurism, scatological phone calls and the stealing of a 14 year old girl's panties," that he has "sociopathic traits," that "he doesn't think of the consequences of his behavior," that "he has had two convictions within two years," and that "he has little respect for the law or social conventions."

Id. at 673.

The instant offense was nothing like Goldberg's. Defendant Phinney had just 28 images on his computer; the record contained no evidence of sharing or internet downloading; and the images were not nearly so disturbing as those in Goldberg. The range in Goldberg was also quite a bit higher, 63-78 months, and the sentence there included no meaningful custodial component, unlike the sentence I imposed in this case. Defendant Phinney was also different than the defendant in Goldberg. He was fifty-seven years old, with no record. His background suggested that he had, aside from this offense, behaved in an entirely pro-social fashion. During his allocution, he eloquently and sincerely expressed remorse and contrition.[11] Therefore, I saw no reason to impose a more severe sentence based on Goldberg.

## IV. CONCLUSION

For the foregoing reasons, I committed defendant to the custody of the Bureau of Prisons for 6 months. Upon release, I ordered him to serve 10 years of supervised release. The statutory supervision range in cases of this sort is 5 years to life under 18 U.S.C. §

---

[11]Based on a statement in the defense version of the offense, the government argued that defendant may not have really accepted responsibility. The statement at issue was that "it is not clear or certain which of the identified items were actually viewed by Mr. Phinney." (PSR, Offender's Statement.) I saw nothing slippery in this statement. The government indicated that according to its review 23 of the 28 images had been accessed on February 20, 2007, which appears to be consistent with the defense statement. Further, as indicated earlier in the text, I found defendant's allocution sincere.

15

3583(k), and the guidelines recommend consideration of a life term, U.S.S.G. § 5D1.2(b). I found that a period above the minimum was warranted to ensure monitoring, but that given defendant's age, life supervision was not necessary. He would be around sixty-eight years old when this period ended and any further problems would be detected within that time.

As conditions of supervision, I imposed computer restrictions; required mental health assessment and treatment; prohibited possession of sexually explicit material; required registration as a convicted sex offender, as mandated by law; required defendant to provide access to all financial information; and, in lieu of a fine, required defendant to perform 10 hours of community service work per year, for a total number of 100 hours. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 20th day of February, 2009.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

16